STATE of Missouri, ex rel. Chris
KOSTER, Attorney General,
Appellant,

v.

PORTFOLIO RECOVERY
ASSOCIATES, LLC,
Respondent.

No. ED 95271.

Missouri Court of Appeals,
Eastern District,
Division Six.

April 5, 2011.

Motion for Rehearing and/or Transfer to
Supreme Court Denied May 24, 2011.

Application for Transfer Denied
Dec. 6, 2011.

**662**

Chris Koster, Attorney General, Debra K. Lumpkins, Assistant Attorney General, Jefferson City, MO, for Appellant.

Robert Thompson, Bryan Cave LLP, Kansas City, MO, John Michael Clear, Jeffrey S. Russell, James R. Wyrsch, Bryan Cave LLP, St. Louis, MO, for Respondent.

KURT S. ODENWALD, Judge.

### Introduction

The State of Missouri, through the attorney general (State), appeals from the circuit court's dismissal of its action alleging violations of Missouri's Merchandising Practices Act (MPA) by Portfolio Recovery Associates, LLC, (Portfolio, LLC). The State had filed a Petition against both Portfolio, LLC and its parent company, Portfolio Recovery Associates, Inc. (Portfolio, Inc.). The circuit court granted Portfolio, LLC's motion to dismiss on the grounds that the MPA does not apply to the collection of debts and against the parent company, Portfolio, Inc. on the grounds that the court lacked personal jurisdiction over Portfolio, Inc. The State appeals with regard to Portfolio, LLC only on the grounds that the MPA does not apply to the collection of debts. Because the alleged acts of deception and unfair practices were not committed in connection with the sale or advertising of merchandise as required by the plain and ordinary language of the MPA, we affirm the trial court's ruling.

### Background

On August 19, 2009, the State filed a Petition for Permanent Injunctions, Restitution, Civil Penalties, and Other Court Orders (Petition) against Portfolio, Inc. and Portfolio, LLC, the parent and subsidiary corporation, respectively. In its Petition, the State alleged that both defendants violated the MPA, Sections 407.020, et al., by repeatedly using deception and unfair practices to collect debts that are not owed or are past the relevant statute of limitation; misrepresenting actions that can be taken against alleged debtors; engaging in deception by filing cases in Missouri without documentation supporting a good faith basis for the suit and dismissing when the consumer contests the action; engaging in unfair practice through unethical, oppressive and unscrupulous conduct in forcing consumers to choose between paying a debt they do not owe and having false collection information on their credit

reports; and assessing fees and interest above the usury limit without written documentation evidencing an agreement to pay the higher interest or fees. The State made no allegations that defendants were a party to the initial transactions with the consumers, or that there were any unfair practices or acts of deception made with regard to the initial consumer transactions.

Portfolio, Inc. and Portfolio, LLC filed a motion to dismiss on April 6, 2010, arguing that the State's Petition failed to meet the pleading requirements of Rules 55.05 and 55.15, and that it failed to state a claim under the MPA because the MPA does not apply to the debt collection activities, and the conduct alleged in the State's Petition is not illegal under any debt collection law. Additionally, defendants argued that the court lacked personal jurisdiction over the parent company, Portfolio, Inc.

In its Memorandum, Order and Judgment entered on June 25, 2010, the court concluded first that the State "failed to carry his burden of proving that the Court can exercise personal jurisdiction over [Portfolio], Inc.," citing *State ex rel. Nixon v. Beer Nuts, Ltd.*, 29 S.W.3d 828 (Mo.App. E.D.2000), and dismissed the State's action without prejudice with regard to the parent company. Secondly, regarding the State's Petition against the subsidiary, Portfolio, LLC, the court found that the MPA does not apply to debt collection practices and dismissed the State's action with prejudice. The court acknowledged that the MPA, as a remedial statute, broadly prohibits false, fraudulent, or deceptive merchandising practices, but found its application to deception only in connection with the purchase or lease of "merchandise" and unfair practice must actually mislead a consumer to his or her detriment. The court rejected the State's interpretation of the MPA's requirement that the deceptive practice was in connec-tion with the sale or lease of merchandise in that the statute includes everything from the advertising or solicitation of the transaction through the collection of payment related to the transaction. Instead, the court found that the MPA's plain and ordinary language controlled and did not cover deception involved in the acquisition of a debt after the sale, the terms of which debt are not themselves infected by the deception.

This appeal follows with regard to the State's claim against the subsidiary, Portfolio, LLC.

### Point on Appeal

In its sole point on appeal, the State alleges that the trial court erred in finding the MPA has no application to the collection of debts and its dismissal of the State's case on that basis. The State argues that the MPA, by its terms, applies to unfair and deceptive practices in connection with the sale of merchandise, "whether committed before, during or after the sale." The State contends that post-sale unfair practices and deceptive acts and practices perpetrated on consumers, which occur after the sale in the debt collection process, fall within the MPA's coverage.

### Standard of Review

Appellate review of a trial court's grant of a motion to dismiss is *de novo. Lynch v. Lynch*, 260 S.W.3d 834, 836 (Mo. banc 2008). "When this Court reviews the dismissal of a petition for failure to state a claim, the facts contained in the petition are treated as true and they are construed liberally in favor of the plaintiffs." *Id.* The State's petition states a cause of action if "its averments invoke principles of substantive law [that] may entitle the plaintiff to relief." *Id., quoting Asaro v. Cardinal Glennon Mem'l Hosp.*, 799 S.W.2d 595, 597 (Mo. banc 1990). Our review of a motion

to dismiss for failure to state a claim is solely a test of the adequacy of the plaintiff's petition. *Dooley v. St. Louis County,* 187 S.W.3d 882, 885 (Mo.App. E.D.2006). We make no attempt to weigh any alleged facts to determine whether they are credible or persuasive, but review the petition only to determine if the facts alleged meet the elements of a recognized cause of action or of a cause that might be adopted. *Id.*

### Discussion

█ The threshold issue to be addressed in this appeal is whether the broad reach of the MPA extends to unfair or deceptive debt collection activities that are alleged to have occurred after the initial transactions, and by a third-party debt collector who was not a party to the original consumer transaction. The State suggests the statute's intentionally broad language and the courts' liberal construction of that language support its position that the MPA extends its reach to include such third-party debt collection activities. As a means of comparison and guidance, the State presents in its brief examples of several other state statutes, as well as federal legislation, which have been determined to apply to post-sale debt collection activities; however, we find no reported Missouri cases that provide clear precedent for this question, which we consider a matter of first impression. After a thorough review of the applicable case law and statutes, this Court is guided by the unequivocal plain language of the MPA as drafted by the legislature, and holds that the debt collection activities alleged in the Petition are not activities "in connection with" the sale or advertisement of merchandise, and thus, do not state a claim under the MPA.

The Missouri Merchandising Practices Act (MPA) provides, in relevant part, as follows:

The act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce . . . in or from the state of Missouri, is declared to be unlawful practice. The use by any person, *in connection with the sale or advertisement of any merchandise in trade or commerce . . . in or from the state of Missouri* of the fact that the attorney general has approved any filing required by this chapter as the approval, sanction or endorsement of any activity, project or action of such person, is declared to be an unlawful practice. Any act, use or employment declared unlawful by this subsection violates this subsection *whether committed before, during or after the sale, advertisement or solicitation.*

Section 407.020.1 (emphasis added). Section 407.100 allows the attorney general to seek injunctions prohibiting such unlawful practices, orders or judgments to prevent such continued acts, and restitution, including civil penalties.

█ The MPA was created to supplement the common-law definition of fraud. *Danforth v. Independence Dodge, Inc.,* 494 S.W.2d 362, 368 (Mo.App.1973). The Act serves to preserve fundamental honesty, fair play and right dealings in public transactions. *Id.* The MPA lacks a precise definition of deceptive practices and was drafted intentionally broad in scope to prevent "evasion by overly meticulous definitions." *Clement v. St. Charles Nissan, Inc.,* 103 S.W.3d 898, 900 (Mo.App. E.D. 2003). The determination of whether the requirements for fair dealing have been violated turns on the unique facts and

circumstances of each case. *Id.* It is not necessary to prove the elements of common law fraud in order to establish a violation of the MPA. *Id.*

"Absent a statutory definition, this Court considers the plain and ordinary meaning of the words themselves, which, in this case, are unrestricted, all-encompassing and exceedingly broad." *Ports Petroleum Co., Inc. of Ohio v. Nixon,* 37 S.W.3d 237, 240 (Mo. banc 2001). As the Missouri Supreme Court recognized in *Ports Petroleum,* the attorney general's regulation, 15 CSR 60–8.020, reflect the "literal words [that] cover every practice imaginable and every unfairness to whatever degree." The regulation describes an "unfair practice" as:

> a practice which—
>
> Either—
>
> Offends any public policy as it has been established by the Constitution, statutes or common law of this state, or by the Federal Trade Commission, or its interpretive decisions; or
>
> Is unethical, oppressive or unscrupulous; and
>
> Presents a risk of, or causes, substantial injury to consumers.

*Id.*

While we acknowledge the Supreme Court's broad description of the term "unfair practices" under the MPA, this Court does not find an equivalent broad interpretation by the Supreme Court of the phrase "in connection with" the sale or advertisement of any merchandise in trade or commerce. The phrase "in connection with," for purposes of the MPA, is not statutorily defined. "Connection" is defined in Webster's dictionary as meaning "relationship in fact." *Merriam–Webster Online Dictionary,* http://www.merriam-webster.com/dictionary/ connection, accessed March 3, 2011. Applying this definition, we look for a "relationship in fact" between the advertising and sale of the merchandise at issue in the State's Petition and the unfair practices alleged against Portfolio, LLC. The unfair practices as detailed in the Petition are not alleged to have been made before or at the time of the advertising or purchase of the merchandise, and Portfolio, LLC is not alleged to have been a party to or have had any involvement with the initial sales transaction between the buyer and seller. Upon reviewing the Petition and record before us, we do not find allegations of the "relationship in fact" required to state a cause of action under the MPA.

The State argues that the MPA is made "particularly expansive" by the use of the phrase "in connection with" and cites unreported cases as support for its position. The State acknowledges that the Missouri Supreme Court has not yet addressed the applicability of the MPA to "a consumer fraud that flows forward from the central transaction, as opposed to a fraud that began before the central transaction." Finding no reported case on point, the State analogizes the case at bar to *Gibbons v. Nuckolls,* 216 S.W.3d 667, 669 (Mo. banc 2007), in which the Supreme Court held that privity of contract was not required to find a violation of the MPA. In *Gibbons,* a wholesale dealer of automobiles sold a car to a retail dealership, and did not disclose that the car in question had been damaged in an accident. Not aware of this fact, the retail dealership sold the vehicle to Gibbons without disclosing that the car previously had been damaged in an accident. Gibbons later sued both the retail dealership and the wholesale dealer for alleged deceptive practices under the MPA. *Id.* at 668. On appeal, the Supreme Court held that the wholesale dealer was liable to the plaintiff consumer under the MPA, even though the plaintiff purchased his automobile from the retail dealership and was not

in privity with the wholesaler. *Id.* at 669–70. In so holding, the Supreme Court did not eliminate the requirement that the defendant engage in unfair practices "in connection with the sale or advertisement of any merchandise in trade or commerce." *Id.* In *Gibbons,* although the wholesale dealer had no direct involvement with the consumer who purchased the car, the deceptive conduct was deemed to have occurred "in connection with" the sale of the car to the retail dealership by the wholesaler, and subsequently to the plaintiff. The *Gibbons* court held that concealing the condition of the car that was ultimately sold to the consumer constituted the violation of the MPA, regardless of who concealed the information. We cannot make the same finding with regard to the allegations made in the Petition against Portfolio, LLC because, unlike the claim in *Gibbons,* the Petition alleges no deception or unfair practice made to the consumer at or prior to the initial sales transaction between the consumer and the seller.

The State also cites *Fielder v. Credit Acceptance Corp.* as support for its argument that the collection of a debt arising out of a sale of goods or services is subject to the provisions of the MPA, even when the consumer's debt is assigned to a third party who was not a party to the initial sales transaction. 19 F.Supp.2d 966 (W.D.Mo.1998) (overruled on other grounds by *Fielder v. Credit Acceptance Corp.,* 188 F.3d 1031 (8th Cir.1999)). In *Fielder,* plaintiffs were purchasers of used cars who entered into retail installment sales contracts with the seller at the time of the sale. Following the car sales, Credit Acceptance purchased the retail installment sales contracts from the used car dealerships. Credit Acceptance supplied the installment sales contract forms to the selling used car dealers. *Id.* The purchasers later sued Credit Acceptance for unfair and deceptive activities allegedly perpe-trated by Credit Acceptance as it attempted to collect the amounts owed by the purchasers under the retail installment sales contracts. The court found that Section 407.020 could apply to Credit Acceptance if 1) the plaintiffs could establish that Credit Acceptance directly violated the section by misrepresenting the amount of the official fees or 2) extending credit is a service under that section. *Id.* at 978. The court cited *In re Western Acceptance Corp., Inc.,* 117 Idaho 399, 788 P.2d 214 (1990), for the proposition that Section 407.020 applied to "services" such as financing a retail installment contract. *Id.*

■ While we agree with *Fielder* that the MPA applies to the sale of services as well as tangible goods, *Fielder* nevertheless offers no support for the State's position here because the alleged wrongful conduct in *Fielder* related to the initial consumer transaction, i.e. inducing consumers to enter into the financing transaction by deceptively stating "the original terms of payment" in the retail installment sales contract. *Fielder* is distinguished from the case at bar because the purchasers in *Fielder* were not alleged to have encountered any deceptive or unfair practice in connection with the subsequent debt collection activities; rather, the deceptive conduct that was alleged to violate the MPA in *Fielder* occurred during the original sales transaction. The State's Petition contains no such allegations against Portfolio, LLC.

The State also cites *Consumer Finance Corp. v. Reams,* 158 S.W.3d 792 (Mo.App. W.D.2005), to support its argument that an assignee such as Portfolio, LLC may be held liable under the MPA. In *Reams,* the consumer financed the purchase of her automobile and sought damages under both the MPA and the Uniform Commercial Code following the repossession of her automobile upon her default on the auto-

mobile loan. At trial, the only issue litigated was the sufficiency of the notice provided to the consumer prior to the liquidation of the collateral following the repossession. *Id.* at 795. On appeal, the Western District held that the finance company failed to meet its burden to present substantial evidence that the post-repossession sale was conducted in a commercially reasonable manner as required under Section 400.9–610, RSMo Supp.2001. *Id.* at 798. Conspicuously absent from the opinion issued by the Western District Court of Appeals is any discussion of the MPA. Rather, the analysis and holding of the Western District related solely to the lender's failure to conduct a commercially reasonable sale as required under the UCC. *Id.* at 797–98. *Reams* provides absolutely no support for the State's MPA claims.

■ The facts in each case upon which the State relies to show that the practices alleged in its Petition were made "in connection with the sale" are significantly distinguishable from the facts presented here. The State has provided no judicial authority, and we are aware of none, supporting its claim that the deception or unfair practices alleged in its Petition occurred in connection with the sale or advertisement of merchandise. We are not persuaded that actions occurring after the initial sales transaction, which do not relate to any claims or representations made before or at the time of the initial sales transaction, and which are taken by a person who is not a party to the initial sales transaction, are actions made "in connection with" the sale or advertisement of merchandise as required by the MPA.

Declining to find the State's Petition alleges unfair practices that were made "in connection with" the sale or advertisement

of merchandise, we now address the State's argument that the MPA's language "before, during, or after" the sale extends the reach of the MPA to third-party debt collectors who acquire the debt *after* the sale is completed, and who have no other involvement with the sales transaction under the MPA. Finding no relevant judicial authority to support its position, we again reject the State's argument. As shown by *Schuchmann v. Air Services Heating & Air Conditioning, Inc.*, actions relating to warranties occurring *after* the sale, but which were made in connection with the sale, provide context for the MPA's plain language allowing statutory violations to occur after the sale. 199 S.W.3d 228, 233 (Mo.App. S.D.2006). We agree that the plain language of the MPA applies to deceptive or unfair post-sale conduct, but only when such conduct directly relates to the sale or advertisement of merchandise. The "before, during or after the sale" language of the MPA does not eliminate, but merely modifies the requirement that the unfair trade practices be made "in connection with" the sale.[1]

■ The State contends that the MPA defines its scope of coverage by the relationship between the consumer and the transaction, not by the relationship of the parties to each other. We agree with the State and do not limit the reach of the MPA to only the merchant, seller and consumer. We recognize that an assignee or a party in a privity relationship may be held liable for its conduct under the MPA, as the Supreme Court specifically held in *Gibbons*, 216 S.W.3d at 669. However, our ruling here is dictated by the absence of any relationship of the alleged unfair practice or deception to the initial sale or advertisement of the merchandise, as is required by the plain language of the MPA.

1. In its brief the State cites cases from various other jurisdictions under differing state laws. None of the cases or statutes offer guidance to this Court given the precise language of the MPA.

As the State suggests, where there is little court interpretation for the meaning of the phrase "in connection with," we are appropriately guided by the plain and clear meaning of the language as used in the MPA. *Ross v. Dir. of Revenue*, 311 S.W.3d 732, 735 (Mo. banc 2010). "The entire thrust of the Merchandising Practices Act is that consumers rely upon the fair dealing of those selling merchandise and services." *State ex rel. Webster v. Areaco Inv. Co.*, 756 S.W.2d 633, 637 (Mo.App. E.D.1988). Although the statute affords very broad protections to Missouri consumers, the plain language of the statute, as drafted by the legislature, simply does not reach the conduct as alleged in the State's Petition. When applying the accepted definition of the term "connection" to the allegations pled by the State in its Petition, we fail to find the necessary "relationship in fact" between the advertisement or sale of the merchandise and the deceptive practices of which the State complains. The State does not allege that Portfolio, LLC sold any merchandise or service, or was a party to the initial sales transaction. The State does not allege that any deceptive or unfair practice occurred either before or at the time the initial sales transaction was concluded. The consumers on whose behalf the State brings this Petition relied upon the representations, practices and dealings of the sellers from whom they purchased their merchandise, and those representations, practices and dealings are not alleged by the State to violate the MPA. We will not disregard the statutory requirement that an unfair trade practice must be made in connection with the sale or advertisement of merchandise to violate the MPA.

We acknowledge and commend the State's efforts to aggressively police the marketplace of trade and commerce. With our holding, we do not suggest that the actions alleged in the Petition are not actionable. However, we cannot undertake a legislative role and write into the MPA language that simply does not exist. We do not read the plain language of the MPA to provide that debt collection by a third party as alleged in the Petition is "in connection with" the sale of merchandise, and is included among the activities prohibited by the MPA. In so holding, we address only whether Portfolio, LLC's alleged abuses state a cause of action under the MPA as presently written, and do not address whether a cause of action exists against Portfolio, LLC under other federal or state statutes, or common law.

The State's point on appeal is denied.

### Conclusion

We affirm the trial court's judgment dismissing the State's cause of action.

ROBERT G. DOWD, JR., J., and GAEL D. WOOD, SP. J., Concur.