

# SUPREME COURT OF MISSOURI
# en banc

DAVIS R. CONWAY AND )
SHERI D. CONWAY, )
                     )
    Appellants, )
                     )
v. )        No. SC93951
                     )
CITIMORTGAGE, INC. AND )
FEDERAL NATIONAL MORTGAGE )
ASSOCIATION, INC., )
                     )
    Respondents. )

## APPEAL FROM THE CIRCUIT COURT OF ST. CHARLES COUNTY
The Honorable Jon A. Cunningham, Judge

*Opinion issued August 19, 2014*

Homeowners appeal from the trial court's judgment dismissing their claim against

Federal National Mortgage Association ("Fannie Mae") and CitiMortgage under the

Missouri Merchandising Practices Act (MMPA), section 407.020,[1] for an alleged

wrongful foreclosure of a deed of trust. The trial court held the MMPA did not apply

because Fannie Mae and CitiMortgage were not parties to the original loan transaction. It

further held that the MMPA did not apply to post-sale activities that were unrelated to

---

[1] All references are to RSMo Supp. 2013 unless otherwise noted.

claims or representations made before or at the time of the transaction.  Homeowners contend the trial court erred in construing the phrase "in connection with" too narrowly to exclude post-transaction activities from MMPA coverage.

At issue in this case is whether the homeowners sufficiently pleaded that the defendants' alleged wrongful foreclosure was "in connection with" the  sale of merchandise so as to state a claim under the MMPA.  For the purposes of the MMPA, a loan is an agreed upon bundle of services being "sold" by the lender to the borrower, and the "sale" of a loan lasts until the last service is performed or the loan is repaid.  Accordingly, allegations of fraud and deception in the course of those services are "in connection with" the "sale," as required by section 407.020.1.  This is true even where, as here, the party committing the alleged fraud or deception is not the seller.  As long as the plaintiff alleges that the misconduct occurred in connection with the services that comprise the "sale" of a loan, the actor can be liable under the MMPA.

Here, the homeowners allege that the defendants committed fraud and deception in the course of performing some of the services that were agreed to at the outset of the loan.  Because the sale of a loan lasts as long as the agreed upon services are being (or could be) performed, the homeowners' allegations of fraud and deception must have occurred "in connection with" the "sale" of their loan.  Other questions relating to whether loan modification negotiations are done "in connection with" the initial extension of credit in a loan are considered in a second case decided today, *Watson v. Wells Fargo Home Mortgage, Inc.*, --- S.W.3d --- (Mo. banc 2014) (No. SC93769).  The trial court's judgment is reversed, and the case is remanded.

## Factual Background

In 2007, Davis and Sheri Conway purchased a home in Wentzville ("the Wentzville property") with the intention of remodeling and making it their permanent home. They continued to reside at their home in St. Peters ("the St. Peters property") during the renovations. In conjunction with this purchase, they obtained a mortgage loan from Pulaski Bank ("the 2007 loan"). Pulaski assigned the loan to Fannie Mae, and CitiMortgage serviced the loan.

During renovations, the Wentzville property was damaged in a fire and had to be torn down. The Conways subsequently settled a claim with their insurance company for $150,000 and notified the loss mitigation department at CitiMortgage. As work progressed on rebuilding, the insurance company cut checks payable to both the Conways and CitiMortgage. The Conways endorsed the checks, and CitiMortgage held the funds in an escrow account. As the Conways submitted bills, CitiMortgage sent payments to the St. Peters address. Although the insurance company paid the full amount of the claim, the Wentzville property required additional construction in the amount of $150,000. The Conways notified CitiMortgage that they would not have the funds to complete the construction, and CitiMortgage stated it intended to hold the last $15,000 of the insurance money in the escrow account until the construction was complete.

The Conways then fell behind on their mortgage payments by approximately $9,000, but CitiMortgage would not apply the $15,000 balance from the escrow account to the balance owed on the 2007 loan. Instead, CitiMortgage sent a foreclosure notice to the Wentzville address, even though it had sent payments relating to the insurance

3

settlement to the St. Peters address.  After CitiMortgage foreclosed on the Wentzville

property, Fannie Mae acquired title to the property.

The Conways filed a claim against Fannie Mae and CitiMortgage (collectively

"Defendants") under the Missouri Merchandising Practices Act (MMPA), section

407.020, alleging that CitiMortgage engaged in unfair practices "in connection with the

sale of the mortgage loan" by sending the notice to the Wentzville address despite having

actual or constructive notice that the Conways lived at the St. Peters property, failing to

apply the funds in the escrow account to the mortgage balance, failing to remit the escrow

funds after the foreclosure, and failing to provide proper notice of the foreclosure sale.

Defendants filed a motion to dismiss, arguing that the alleged wrongful

foreclosure of the deed of trust was not "in connection with" the 2007 loan.  The trial

court granted the motion, finding that the MMPA "does not apply to post-sale . . . activity

wholly unrelated to claims or representations made before or at the time of the

transaction."  It further found that the Conways had not alleged that the Defendants were

original parties to the loan.  The Conways appeal.  This Court granted transfer pursuant to

Mo. Const. art. V, sec. 10.

### Standard of Review

Appellate courts review a trial court's grant of a motion to dismiss *de novo*.  *Ward

v. W. Cnty. Motor Co., Inc.*, 403 S.W.3d 82, 84 (Mo. banc 2013).  A motion to dismiss

for failure to state a claim tests the adequacy of a plaintiff's petition.  *Nazeri v. Mo.

Valley Coll.*, 860 S.W.2d 303, 306 (Mo. banc 1993).   The petition is reviewed in an

almost academic manner to determine if the plaintiff has alleged facts that meet the

4

elements of a recognized cause of action or of a cause that might be adopted in that case. *Id.* The facts alleged in the petition are assumed to be true and are construed liberally in favor of the plaintiff. *Ward*, 206 S.W.3d at 84.

**Analysis**

At issue in this case is whether the Conways sufficiently pleaded that the Defendants' alleged wrongful foreclosure of the deed of trust was "in connection with" the 2007 loan so as to have stated a claim under the MMPA. In their petition, the Conways alleged an MMPA violation as a result of the "sale of the mortgage loan" they obtained when purchasing the Wentzville property. They further alleged that Pulaski Bank, the original lender, assigned the loan to Fannie Mae and that CitiMortgage was an agent of Fannie Mae. The Conways stated in their petition that CitiMortgage engaged in four alleged unlawful actions in foreclosing on the Wentzville property: (1) sending notice of the foreclosure sale to the Wentzville property even though it knew the Conways resided at the St. Peters property; (2) failing to act in good faith by refusing to apply the $15,000 in the escrow account to the outstanding balance on their mortgage; (3) failing to remit the balance of the escrow account after the foreclosure; and (4) failing to provide proper notice of the foreclosure sale pursuant to section 443.325.

The MMPA, as first adopted by the legislature in 1967, protects consumers by expanding the common law definition of fraud "to preserve fundamental honesty, fair play and right dealings in public transactions." *State ex rel. Danforth v. Independence Dodge, Inc.*, 494 S.W.2d 362, 368 (Mo. App. 1973); *see Huch v. Charter Commc'ns, Inc.*, 290 S.W.3d 721, 725-26 (Mo. banc 2009). For this purpose, section 407.020.1

5

makes the "act, use or employment by any person" of any unfair or deceptive practice done "*in connection with* the sale or advertisement of any merchandise" unlawful (emphasis added). The use of an unlawful practice is a violation of the MMPA "whether committed before, during or after the sale," so long as it was made "in connection with" the sale. *See* section 407.020.1. Section 407.025.1, RSMo 2000, permits private individuals to bring an action under the MMPA,[2] and courts may award a prevailing party punitive damages and attorney fees.

While the MMPA states that a violation can happen at any time before, during or after a sale, it does not set out when an unlawful act is committed "in connection with" the sale. When a statute does not include a definition for a term, courts consider its plain and ordinary meaning. *Ports Petroleum Co., Inc. of Ohio v. Nixon*, 37 S.W.3d 237, 240 (Mo. banc 2001). While the full phrase "in connection with" is not in the dictionary, "to connect" is defined as "to have a relationship." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 480 (1993). In this light, section 407.020.1 prohibits the use of the enumerated deceptive practices if there is a relationship between the sale of merchandise and the alleged unlawful action. According to the statute, the unlawful action may occur at any time before, during or after the sale and by any person.

In this case, the Conways' premised their MMPA claim on the 2007 loan transaction. To have stated a claim, the Conways must have alleged a relationship

---

[2] Section 407.100 allows the attorney general to pursue a cause of action under the MMPA as well.

between the foreclosure actions and the 2007 loan.[3]

A loan is composed of both the initial extension of credit and the bundle of related services. It creates a long-term relationship in which the borrower and the lender continue to perform various duties, such as making and collecting payments over an extended period of time. Because each party must continue to perform these duties for the life of the loan, the sale continues throughout the time the parties perform their duties. A party's right to collect a loan is part of that sale and is, therefore, "in connection with" the loan.

In this case, as in many cases, the loan servicer was a different entity than the loan originator. Defendants argue that the Conways' claim is foreclosed by two court of appeals decisions: *State ex rel. Koster v. Professional Debt Management, LLC*, 351 S.W.3d 668 (Mo. App. 2011), and *State ex rel. Koster v. Portfolio Recovery Associates, LLC*, 351 S.W.3d 661 (Mo. App. 2011). These cases were handed down at the same time and are virtually identical. In both cases, the plaintiffs brought a suit against third-party debt collectors alleging MMPA violations for deceptive and unfair debt collection practices. The defendants filed motions to dismiss for failure to state a claim, arguing that because they were not parties to the original transactions, their actions could not have been "in connection with" the original sales transactions. The court of appeals held that "actions occurring after the initial sales transaction, which do not relate to any claims or

---

[3] They also must have alleged that: (1) made a purchase; (2) for personal, family, or household purposes; and (3) suffered an ascertainable loss of money or property as a result of an act declared unlawful by section 407.020. *See Ward v. W. Cnty. Motor Co., Inc.*, 403 S.W.3d 82, 84 (Mo. banc 2013). The Conways made these allegations in their petition, and they are not at issue.

representations made before or at the time of the initial sales transaction, and which are taken by a person who is not a party to the initial sales transactions, are not made 'in connection with' the sale." *Professional Debt*, 351 S.W.3d at 674; *Portfolio Recovery Associates*, 351 S.W.3d at 667.

A similar argument was rejected in *Schuchmann v. Air Services Heating & Air Conditioning*. 199 S.W.3d 228, 232 (Mo. App. 2006). There, the defendant argued that the plaintiff had not shown the failure to honor a lifetime warranty several years after the initial purchase was "in connection with the sale" because the plaintiff could not prove the defendant had made any misrepresentations at the time of the sale. The court noted that the MMPA was meant to supplement the common law definition of fraud, and the fact that the wrongful conduct came after the sale was "of no consequence." *Id.* Whether it is a lifetime warranty or a loan, how a party enforces the terms of a "sale" is "in connection with" the original sale of merchandise because the MMPA covers alleged wrongdoing "before, during or after" the sale.

Given that the MMPA was enacted to supplement the common law definition of fraud, there is no compelling reason to interpret "in connection with" to apply only when the entity engaged in the misconduct was a party to the transaction at the time the transaction was initiated as *Professional Debt* and *Portfolio Recovery Associates* require. Even if the loan servicer was not an original party when the lender and borrower agreed to the services and responsibilities each would perform, enforcing the terms of the loan is

8

in connection with the ongoing sale of the loan, as discussed above. Because a loan is an ongoing transaction, loan collection procedures, whether initiated by a loan originator or a loan servicer, are done "in connection with" the original procurement of the loan. To the extent *Professional Debt* and *Portfolio Recovery Assets* conflict with this holding, they should no longer be followed.

Construing "in connection with" to include loan collection practices is consistent with case law that has interpreted the MMPA to provide protection to consumers in a gradually increasing variety of circumstances. For example, in *Gibbons v. J. Nuckolls, Inc.*, this Court determined that a plaintiff could prevail on an MMPA claim against a wholesaler who was not directly involved in the relevant transaction. 216 S.W.3d 667 (Mo. banc 2007). In that case, a plaintiff brought an MMPA suit against an automobile wholesaler after purchasing the car from a dealership that had purchased the car from the wholesaler. The wholesaler filed a motion to dismiss, arguing that it was not a "person" under section 447.020.1 because it was not the direct seller.[4] This Court rejected this argument, noting that "precedent consistently reinforces the plain language and spirit of the statute to further the ultimate objective of consumer protection." *Id.* at 670. It then determined that the phrase "any person" "does not contemplate a direct contractual relationship between plaintiff and defendant." *Id.* at 669.

---

[4] Section 407.010(5), RSMo 2000, defines "person" as "any natural person or his legal representative, partnership, firm, for-profit or not-for-profit corporation . . . and any agent . . . thereof." The Conways alleged that Pulaski assigned the loan to Fannie Mae and that CitiMortgage was an agent of Fannie Mae, as section 407.010(5) requires. *See Peel v. Credit Acceptance Corp.*, 408 S.W.3d 191, 205-06 (Mo. App. 2013) (noting that the defendant's status as an assignee of an installment contract created the requisite connection to the sale).

Similarly, here, it is not necessary for the Defendants to have had "a direct contractual relationship" with the Conways when they first obtained the loan. The *Gibbons* court found a plaintiff can maintain a suit under the MMPA against a party with a connection to the merchandise *before* a buyer enters the transaction. Similarly, the MMPA may cover parties who enter the relationship *after* a buyer enters the transaction, including a loan servicer.

Interpreting "in connection with" to include enforcing the terms of a loan is also consistent with the interpretation this Court has given to other phrases in the MMPA. Illustrative of this point is *Ports Petroleum*. In *Ports Petroleum*, this Court had to determine whether a violation of the Motor Fuel Marketing Act, sections 416.600 to 416.640, was an "unfair practice" actionable under the MMPA. Looking at the plain meaning of "unfair practice," this Court noted the words themselves were "unrestricted, all-encompassing and exceedingly broad." 37 S.W.3d at 240. It further found that "the literal words cover every practice imaginable and every unfairness to whatever degree." *Id.* Given the potentially broad scope of what is prohibited under the MMPA, it would seem incongruous to limit "in connection with" to only apply to the original parties in a transaction.

## Conclusion

The Conways have stated a claim under the MMPA as the Defendants' alleged actions were "in connection with" the 2007 loan. The trial court's judgment is reversed, and the case is remanded.[5]

_____
Mary R. Russell, Chief Justice

All concur.

---

[5] Prior to the submission of this case on appeal, the Conways filed a motion for attorney fees on appeal pursuant to section 407.025.1. On remand, the trial court should determine the appropriate amount of attorney fees for counsel's appellate work. *Berry v. Volkswagen Grp. of Am., Inc.*, 397 S.W.3d 425, 435 (Mo. banc 2013).